## ISABELLE E. SMITH

### vs.

## BALTIMORE TRUST COMPANY AND HENRY C. KENNARD, TRUSTEES.

*Wills: construction; supplying obvious omissions.*

Where it is plain that the testator has not expressed himself as he intended and supposed that he had done, and the defect arises from the omission of some word or words, and where it was certain what particluar words were so omitted, they may be supplied by intendment.                    p. 408

But no words can be supplied so long as there is fair ground to question just what particular words were intended to have been used; whatever may have been the general intent of the testator, if it does not appear that he has omitted words that he intended to use, it is not competent for the Court, by intendment, to reconstruct the will to give effect to such intention.

p. 409

In order to justify the addition of words which it appears that the testator omitted, not only must it plainly appear from the face of the will that words intended to be used and which testator supposed he had used were omited, but it also must appear with equal certainty just what particular words were omitted.                    p. 410

*Decided January 14th, 1919.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, CONSTABLE and STOCKBRIDGE, JJ.

*Charles F. Stein* (with whom were *Richard E. Preece* and
*Frank E. Welsh, Jr.,* on the brief), for the appellant.

*John Watson, Jr.,* and *Joseph S. Goldsmith,* for the appel-
lees.

PATTISON, J., delivered the opinion of the Court.

By his will executed on the fifteenth day of July, 1896,.
James E. Clayton, after making certain bequests to Miss
Welham of England, who afterwards became his wife, and
after providing for the release of a mortgage against his aunt,
Mrs. Tweedy, divided the rest and residue of his estate in
two equal parts.

One of these parts he devised and bequeathed unto the
appellees, the Baltimore Trust and Guarantee Company and
Henry C. Kennard, in trust for his sister Nannie Clayton.
The other part he devised and bequeathed to said trustees in
trust for his three aunts, Mary Anne Smith, Elizabeth Mar-
garet Manning and Celina Frances Tweedy.

In respect to the trust created for the benefit of his sister,
the will directs his trustees:

> "To pay the net income derived from one-half there-
> of to my sister Nannie Clayton for and during the time
> of her natural life and from and immediately after her
> death to pay said income in equal portions, to my
> Aunts Celina Frances Tweedy, Elizabeth Margaret
> Manning, and Mary Anne Smith, for and during the
> term of their respective lives. * * * If either of my
> said Aunts should die leaving children then her por-
> tion of said income and the portion of the corpus of
> my estate from which said income is derived shall go
> to and become the absolute property of such children.
> But if either of my said Aunts should die leaving no
> children, then her portion of said income shall be
> paid to her surviving sister or sisters during their
> respective lives *with remainder of the corpus out of
> which said income is derived to the children of such
> survivor or survivors per stirpes.* If, however, my
> sister Nannie Clayton should die leaving children these

devises over to her Aunts and their children shall be void and the one-half of my estate out of which her income is derived shall go to her children absolutely."

The will then provides:

"As to the other half of the net income derived from said rest and residue I request and direct my said executors and trustees to pay it over in equal shares of one-third to each of my Aunts, Celina Frances Tweedy, Elizabeth Margaret Manning, and Mary Anne Smith, for and during the term of their respective lives. Upon the death of either of my said Aunts leaving children, then a portion of the corpus of my estate equal in value to that from which the income payable to said Aunt for life had been derived shall be transferred to such children *per stirpes.* If any of my said Aunts shall die leaving no children then the portion of the net income of my estate payable to such Aunt for life shall be divided equally between my surviving Aunts for their respective lives. * * * If at the death of any of my said Aunts without children * * * there be one Aunt surviving and the children of a deceased Aunt, then the surviving Aunt shall receive during life one-half of the income payable to such childless deceased Aunt and the corpus from which the other half of the income is derived shall go to the children of the deceased Aunt who died leaving children. If my sister Nannie Clayton should survive all of my said Aunts and then die leaving no children or descendants in the direct line, it is my will and I hereby direct that the corpus of my estate out of which the portion of the income payable to her is derived to be transferred to the children of my said Aunts *per stirpes,* the children of a deceased child to take the parent's share."

James E. Clayton died on or about the 18th day of June, 1902, survived not only by his wife, Alice Clayton, and his sister Nannie Clayton, both of whom are now living, but also by his said three aunts, all of whom have since died.

Elizabeth M. Manning died on March 23rd, 1906, leaving children and grandchildren of a deceased child, surviving her.

Mary Anne Smith died on the 30th day of July, 1906, leaving children surviving her, one of whom, Isabelle E. Smith, is the appellant in this case.

The last surviving aunt, Celina Frances Tweedy, died in the month of February, 1917, without child, children or descendants in the direct line.

The bill in this case was filed by the appellees, trustees aforesaid, asking for a construction of that part of the will creating the trust estate for the benefit of the aunts, that they may be guided and controlled thereby in the disposition of the one-sixth part of the "Rest and Residue" of the testator's estate from which the income payable to Mrs. Tweedy was derived.

It is claimed by the appellant that upon the death of her aunt, Mrs. Tweedy, the portion of the corpus of the estate from which the income payable to her had been derived passed under the will to the children of her deceased sisters, Mrs. Manning and Mrs. Smith respectively.

It will be seen from the provisions of the will that the income derived from one-half of the "Rest and Residue" of the testator's estate was to be paid in equal parts to his three aunts for and during the period of their respective lives and upon the death of either of them *leaving children* the portion of the corpus of the estate, equal in value to that from which the income payable to her had been derived should be transferred to such children.

Elizabeth M. Manning was the first to die. She left children and grandchildren, children of a deceased child, and under the provisions of the will the portion of the corpus of the estate from which the income payable to her was derived passed to them.

Mary Anne Smith next died. She also left children and to them passed the portion of the estate from which the income payable to her had been derived.

Mrs. Tweedy, who was the last to die, left no children or direct descendants surviving her, and the question is to whom shall be transferred the portion of the testator's estate from which the income payable to her had been derived.

The will contains, first, a provision that "If any of my said aunts should die leaving no children, then the portion of the net income of my estate payable to such aunt for life shall be divided equally between my surviving aunts for their respective lives" and, second, "If at the death of any of my said aunts without children * * * there be one aunt surviving and the children of a deceased aunt, then the surviving aunt shall receive during life one-half of the income payable to such childless deceased aunt *and the corpus from which the other half of the income is derived shall go to the children of the deceased aunt who died leaving children.*"

It will be seen that neither of these provisions meets the contingency arising in this case.

The first deals only with the disposition of the income upon the death of any one of the aunts dying without children, and the contingency provided for by the last provision is where one of the aunts dies leaving a sister and the children of a deceased sister surviving her. This last provision can only apply to the second aunt dying. It has no application to the disposition of the corpus of the estate from which the income payable to the last surviving aunt dying childless, had been derived. Consequently there is no express provision in the will for the contingency happening in this case.

It is not however contended by the appellant that there is any such express provision, but she claims that such was the intention of the testator and she asks that words be supplied giving effect to such intention.

"Where it is plain that the testator has not expressed himself as he intended and supposed he had done, and the defect arises from the omission of some word or words, and where it is certain what particular words were thus omitted, they may be supplied by intendment."

"But no words can be supplied, so long as there is any fair ground to question what particular words were intended to

have been used. Whatever may be the general intent of the testator, if it does not appear that he has omitted words *intended* to be used, it is not competent for the Court, by intendment, to reconstruct the will to give effect to such intention." *Heald* v. *Heald,* 56 Md. 313.

It must not only plainly appear upon the face of the will that words intended to be used, which the testator supposed he had used, were omitted, but it must also appear with equal certainly what particular words were thus omitted.

The appellant contends that the words omitted and the ones which the testator intended to use and supposed he had used are those we have italicized in setting out the clause of the will creating the trust estate for the sister.

When these words are supplied the will is made to read as follows: "If any of my aunts should die leaving no children then the portion of the net income of my estate payable to such aunt for life shall be divided equally between my surviving aunts for their respective lives, *with remainder of the corpus out of which said income is derived to the children of such survivor or survivors per stirpes."*

The italicized words are the words supplied.

It was only upon the death of the sister without children that any interest in the trust estate created for her benefit passed either to the aunts or their children.

The situation, in respect to the sister, was quite different when the testator came to dispose of, at the death of the aunts, the corpus of the trust estate created for their benefit. It was known to him that his sister might be living at such time.

The corpus of the aunts' estate passes to their children when they die leaving children, but no disposition is made of such corpus where they die leaving no children, except where the second aunt dying without children is predeceased by an aunt dying with children in which case *one-half* of the corpus from which she derived her income passes to the children of such deceased aunt.

It can not be said that because of this provision or from any general plan or scheme of his in the disposition of his estate it plainly appears that it was the intention of the testator, that upon the death of the last surviving aunt, dying childless, that the corpus of the estate from which she derived her income should go to the children of the other aunt or aunts and not to his sister. To have preferred his sister to his cousins, children of the aunts, in the disposition of said corpus would not have been at all unnatural in such case. Nor does the fact that the children of the aunts were to receive the corpus of the trust estate of the sister upon her death followed by the death of the aunts show that it was the intention of the testator to make the same disposition, upon the death of the aunts, of the corpus of the estate created for them, when at such time the sister might be living or if dead might leave children or descendants to take the same.

The contention of the appellant, we think, is fully answered by the decision of this Court in *Henderson* v. *Henderson,* 131 Md. 313.

In that case, as in this, the Court was construing a clause of the will dealing with "The half of the residue of the estate" of the testator and we there said, "the fact that the view we are adopting will produce a state of partial intestacy is no reason for refusing to apply the terms of the will according to their plain or ordinary meaning," nor should we, because of such fact, reconstruct the will in this case by supplying words that are not plainly shown to have been intended by the testator and supposed by him to have been used.

The will of James E. Clayton failed to dispose of the portion of the corpus of his estate from which the income payable to his aunt, Mrs. Tweedy, had been derived, and consequently, he died intestate as to same, it being a one-sixth part of the rest and residue of his estate. Hence the decree of the lower Court will be affirmed.

*Decree affirmed, the costs to be paid out of said one-sixth of the estate.*